Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT

for the

District of **Oregon**

Division **Portland**

| | | |
|---|---|---|
| **Nisa T. Toum** ) | Case No. | 3:20-cv-01832-MO |
| ) | | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* ) | | |

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Jury Trial: *(check one)* ☒ Yes ☐ No

**-v-**

**Moda Partners, Inc., Moda Inc., dba Moda Health, Moda Health Services and Moda Health Plan, Inc.**

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I.     The Parties to This Complaint

#### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Nisa. T. Toum |
| Street Address | 17500 NE 38th Way |
| City and County | Vancouver, Clark |
| State and Zip Code | Washington, 98682 |
| Telephone Number | 503-567-8425 |
| E-mail Address | nisatoum@icloud.com |

#### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an

individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Defendant No. 1

    Name                               _____

    Job or Title *(if known)*     _____

    Street Address           _____

    City and County         _____

    State and Zip Code     _____

    Telephone Number      _____

    E-mail Address *(if known)*  _____

Defendant No. 2

    Name                                _____

    Job or Title *(if known)*     _____

    Street Address            _____

    City and County         _____

    State and Zip Code     _____

    Telephone Number      _____

    E-mail Address *(if known)*  _____

Defendant No. 3

    Name                                _____

    Job or Title *(if known)*     _____

    Street Address            _____

    City and County         _____

    State and Zip Code     _____

    Telephone Number      _____

    E-mail Address *(if known)*  _____

Defendant No. 4

    Name                                _____

    Job or Title *(if known)*     _____

    Street Address            _____

    City and County         _____

    State and Zip Code     _____

    Telephone Number      _____

E-mail Address *(if known)* _____

**C.     Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Moda Health |
| Street Address | 601 SW 2nd Ave |
| City and County | Portland, Multnomah |
| State and Zip Code | Oregon, 97204 |
| Telephone Number | (503) 228-6554 |

**II.     Basis for Jurisdiction**

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☐     Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐     Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☒     Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐     Other federal law *(specify the federal law)*:

_____

☐     Relevant state law *(specify, if known)*:

_____

☐     Relevant city or county law *(specify, if known)*:

_____

**III.     Statement of Claim**

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.      The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

       ☐      Failure to hire me.

       ☒      Termination of my employment.

       ☐      Failure to promote me.

       ☒      Failure to accommodate my disability.

       ☐      Unequal terms and conditions of my employment.

       ☐      Retaliation.

       ☐      Other acts *(specify)*: _____

       *(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.      It is my best recollection that the alleged discriminatory acts occurred on date(s)

       February 20, 2019

C.      I believe that defendant(s) *(check one)*:

       ☐      is/are still committing these acts against me.

       ☒      is/are not still committing these acts against me.

D.      Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

       ☐      race        _____

       ☐      color       _____

       ☐      gender/sex   _____

       ☐      religion     _____

       ☐      national origin _____

       ☐      age *(year of birth)*  _____  *(only when asserting a claim of age discrimination.)*

       ☒      disability or perceived disability *(specify disability)*
       Disability: Attention Deficit Hyperactivity Disorder
       (ADHD); Perceived: Depression

E.      The facts of my case are as follows. Attach additional pages if needed.

       Please see attached pages 7 - 18.

Please see attached Exhibit 1 for Notice of Rights to Sue Letter (pg. 19-21)
File Name: Exhibit 1. EEOC Notice of Rights to Sue Letter_Rec 07272020

Please see attached Exhibit 2 for EEOC Charge of Discrimination Filed (pg. 22-24)
File Name: Exhibit 2. EEOC Charge of Discrimination Filed_12172019

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

**IV.    Exhaustion of Federal Administrative Remedies**

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

December 17, 2019

B.    The Equal Employment Opportunity Commission *(check one)*:

☐        has not issued a Notice of Right to Sue letter.

☒        issued a Notice of Right to Sue letter, which I received on *(date)*    July 27, 2020    .

*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☒        60 days or more have elapsed.

☐        less than 60 days have elapsed.

**V.    Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.        For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case−related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    October 23, 2020

Signature of Plaintiff    _____

Printed Name of Plaintiff    Nisa T. Toum

### B.        For Attorneys

Date of signing:    _____

Signature of Attorney    _____

Printed Name of Attorney    _____

Bar Number    _____

Name of Law Firm    _____

Street Address    _____

State and Zip Code    _____

Telephone Number    _____

E-mail Address    _____

# Complaint and Jury Demand

I, Nisa T. Toum (Plaintiff), state as follows as my complaint against Defendant, Moda Health Plan, Inc. (henceforth "Moda" or "Defendant").

# Jurisdiction and Venue

1.1      This action is brought for defendant's violations of the Americans with Disabilities Act ("ADA") and Americans with Disabilities Act of 1990 ("ADA") as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), seeking compensatory damages as result of discriminatory treatment where I, Nisa T. Toum (Plaintiff) was not provided reasonable accommodations for my mental disabilities, was subjected to prohibited discrimination because of a perceived mental impairment, and was a victim of unlawful employment practices for having engaged in protected activities which culminated in wrongful discharge.

1.2      This Honorable Court has subject matter jurisdiction to allow this suit pursuant to 28 U.S.C. § 1331. This action is authorized pursuant to 42 U.S.C § 12117(a).

1.3.      This Honorable Court has personal jurisdiction over this civil action because the employment practices and other acts alleged to be unlawful were committed and the damages were suffered by Plaintiff within the jurisdiction of the United States District Court, District of Oregon.

1.4      Pursuant to the Seventh Amendment of the United States Constitution, I, Nisa T. Toum (Plaintiff) demand a trial by jury in the instant case. Fed. R. Civ. P. 38b.

# Exhaustion of Administrative Remedies

3.1      On December 17, 2019, I (Plaintiff) filed timely charges of employment discrimination with the Anti-Discrimination Unit of the equal Employment Opportunity Commission ("EEOC") (Exhibit 2).

3.2      On July 24, 2020, the EEOC mailed a notice of rights to sue letter (mailing was delayed due to the start of the COVID-19 Pandemic) (Exhibit 1).

3.3      On July 27, 2020, I (Plaintiff) received the EEOC notice of rights to sue letter.

# The Parties

4.1     I, Nisa T. Toum (Plaintiff) am a woman who lives in Vancouver, Washington and worked in Portland, Oregon during my employment with Moda. I (Plaintiff) am a citizen of the United States. I (Plaintiff) was born on August 14, 1990.

4.2     At all times relevant herein, I, Nisa T. Toum (Plaintiff) was an employee, within the meaning of the applicable statutes, who suffered from a mental disability of the type protected by said statutes.

4.3     Moda is a corporation providing health insurance within the meaning of the applicable statute, which at all times relevant herein had more than 500 employees.

4.4     I (Plaintiff) was employed by Moda from September 12, 2011, to February 20, 2019. I (Plaintiff) began such employment in the Dental Claims department as a Clerk. In May of 2012, I (Plaintiff) was promoted to the position of Pharmacy Assistant I in the Pharmacy Services department. In December of 2013, I (Plaintiff) received another promotion to the position of Pharmacy Assistant II. In August of 2014, I (Plaintiff) was again promoted to the position of Account Services Coordinator, which I (Plaintiff) held until my dismissal on February 20, 2019.

4.5     At all times relevant herein, I (Plaintiff) was duly qualified to carry out the duties of my positions and remained qualified despite suffering from the limitations from my mental disorder. I (Plaintiff) performed my functions with a high degree of excellence, diligence and interest in my work and expected to be treated equally and to be provided reasonable accommodations for my metal disabilities, and without being subjected to unlawful discrimination on the basis of a disability or perceived mental disability, and for having engaged in protected activities.

4.6     I (Plaintiff) suffer from Adult Attention Deficit Hyperactivity Disorder ("ADHD"), a neurological disorder which substantially impairs some of my major life activities, such as thinking, concentrating and sleeping.

4.7     At all times relevant herein, Mark Timmerman ("Mark") was a male adult individual, who was an employee of Moda, acting within the scope of such employment, and fulfilled duties for all employees as Human Resources Director.

4.8     At all times relevant herein, Robert Judge ("Robert") was a male individual, who was an employee of Moda, acting within the scope of such employment, and performed managerial and supervisory functions and fulfilled duties for me as Director of Pharmacy Services.

4.9     At all times relevant herein, Mary Lou True was a female individual, who was an employee of Moda, acting within the scope of such employment, and performed managerial and supervisory functions and fulfilled duties for Mark as Vice President of Human Resources.

# Factual Allegations

5.1     I (Plaintiff) was hired by Defendant, Moda in September, 2012 and held roles as a Dental Claims Assistant, Rx Marketing Assistant I, Rx Marketing Assistant II and as an Account Services Coordinator, which I (Plaintiff) held for over 4 years up until my termination on February 20, 2019. At the time of my termination, I (Plaintiff) reported to Robert Judge, the Director of Pharmacy Services.

5.2     I (Plaintiff) at all times, with the exception of one year (2018), satisfactory performed my job duties with Moda and received commendations for my good job performance from clients, colleagues and management, which is reflected in all of my performance evaluations from 2011 through 2017.

5.1     On December 12, 2018, I (Plaintiff) met with Robert for one of our standing weekly one on one meetings to discuss priorities, concerns, exchange feedback, seek advice and provide status reports on open tasks I (Plaintiff) was working on at the time. During this meeting, Robert told me that he would be scheduling time with me to go over my 2018 Annual Performance Evaluation and my Performance Improvement Plan ("PIP") soon, which I (Plaintiff) had been made aware of prior to December 12, 2018.

5.2     At the end of this meeting, I (Plaintiff) opened up about personal challenges I (Plaintiff) was struggling with at the time, including my ADHD symptoms getting progressively worse and having an impact on both my performance at work and in my personal life. I (Plaintiff) was also dealing with issues at home, particularly surrounding my grandmother's terminal illness. Robert expressed sympathy to my personal and family issues and out of genuine concern, he met with Mark to request an informal referral to the EAP for counseling (participation not required), following standard company policy whenever an employee discloses personal issues to management.

5.3     Later that afternoon on December 12, 2018, Robert called to let me know that he had shared his concerns regarding my personal issues with Mark and requested that I meet with him to hear his recommendations regarding options available to me through Moda's Employee Assistance Program ("EAP") and to obtain their contact information from Mark. There was never any mention in communications between Robert and I (Plaintiff) of a formal referral to the EAP, which would mandate my participation.

5.4     At 3:56pm on December 12, 2018, I (Plaintiff) sent an email to Mark requesting his availability for a brief meeting to discuss EAP options and resources available that I might find helpful. Due to scheduling conflicts and a miscommunication between Robert and I (Plaintiff), a meeting with Mark did not occur. The fact that I left the office without meeting with Mark first angered and upset him.

5.5     At 5:05pm on December 12, 2018, I (Plaintiff) received a text message from Robert expressing his disappointment that I (Plaintiff) did not meet with Mark to hear his recommendations and I (Plaintiff) apologized and explained the miscommunication. Robert instructed me to acknowledge the meeting request for December 18, 2018 with himself and Mark to discuss my 2018 performance evaluation, PIP and options for me through the EAP.

5.6     On December 18, 2018, a meeting was held between myself, Robert and Mark where I (Plaintiff) was told that I (Plaintiff) was not meeting the expectations, that my performance was not acceptable and that I (Plaintiff) would be placed on a sixty-day PIP, and if I (Plaintiff) still did not meet expectations, I (Plaintiff) would then be subjected to further disciplinary actions up to and including termination. I (Plaintiff) would also not be receiving an annual salary increase unless I successfully met all the terms and conditions of the PIP, at which point an updated 2018 performance evaluation would be re-submitted to HR and I (Plaintiff) would receive a raise retroactive back to August 2018.

5.7     During this meeting, Mark also told me that I was required to see a mental health counselor through Moda's EAP as a condition to keeping my employment, and opting out was not an option. Mark advised me that the reason for this mandated referral to the EAP was to "make sure you get the help you need". This formal referral to the EAP does not comply with company or EAP policy as formal referrals are typically only used as part of a "Last Chance Agreement", following a documented history of poor performance, disciplinary action, write ups, verbal coaching etc. Throughout my employment with Moda, I (Plaintiff) was never subjected to disciplinary action, write ups, written warnings, coaching etc. with the exception of my 2018 PIP, which I (Plaintiff) was placed on due to scoring low on my 2018 performance evaluation.

5.8     I (Plaintiff) did not refuse Mark's demand that I (Plaintiff) receive counseling as a condition of my employment although I (Plaintiff) advised Mark and Robert that I (Plaintiff) would engage in counseling under the condition that I (Plaintiff) would be able to meet with a counselor who specializes in Adult ADHD as I (Plaintiff) already had plans to seek treatment for my mental condition and felt this would be a perfect opportunity to take advantage of in order to do so. Neither Mark nor Robert objected to this.

5.9     I (Plaintiff), would often work from meeting rooms within the building due to my ADHD which made it difficult for me to concentrate at my assigned work station due to frequent interruptions from co-workers and the noisy environment. My colleagues expressed that they did not have any issue with this as long as I (Plaintiff) made myself available and kept in constant contact with them.

5.10    On or around September 2018, Robert approached me and proposed moving me to a new desk on the other side of my current work station where I (Plaintiff) would be separated by a wall and not surrounded by cubicle neighbors. Robert asked if this would help minimize the distraction and noise, allowing me to concentrate on my work, and to help alleviate my ADHD symptoms to which I (Plaintiff), replied yes. A plan was set in motion to have me move to my new desk in December of 2018 or January 2019, whenever the current occupant moved to the 17th floor.

5.11    One of the conditions listed in my PIP that I (Plaintiff) was required to meet in order to be successful was written as, "you will no longer be allowed to work in other areas in the building due to a poor pattern of your being unavailable/and or non-responsive to your team. Until further notice, you are required to be available during normal working hours at your assigned desk".

5.12    As Mark read the conditions of my PIP out loud, I (Plaintiff) interrupted him to ask if I would still be allowed to move to a new desk in a quieter area of the department because of my ADHD since Robert

had previously given me his verbal approval to do so and was the one who suggested this accommodation to me in order to help with my ADHD back in September of 2018, to which Mark replied "no, that is not an option right now until you can successfully meet all the requirements of your PIP".

5.13    No longer having the option to move desks aggravated my mental disability and I (Plaintiff) would often have to work late into the night/early morning nearly every day up until my termination, which I (Plaintiff) was asked to stop doing in the past due to concerns from clients and Robert,  just to keep up with tasks and projects due the environment at my assigned work station and ADHD symptoms preventing me from working during the day.

5.14    I (Plaintiff) provided signature on my PIP and 2018 Performance Evaluation and was not asked to sign any documents committing to the formal EAP referral or a timeline to have it completed by. At the end of the meeting, Robert sent me a text stating "Thx for meeting this morning. It was also nice to see you looking more relaxed. I am really looking forward to having you back", assuring me that he had faith in me successfully meeting the conditions of my PIP and he was willing to support me along the way.

5.15    On January 9, 2019 at 9:40am, Mark sent me an email while I was in the middle of a client conference call along with Robert. In the email, Mark requested that I come to his office to sign my release form for the EAP. I kindly reminded Mark that my PIP requires that I attend all my meetings and stay for the full duration however, I would try to get Robert's attention and ask him if I (Plaintiff) can step away.

5.16    At 1:00pm, when I was finally able to make it to Mark's office, he refused to let me in for a private conversation because he was upset that I was not completing my EAP counseling sessions quickly enough, and instead I was insulted and subjected to intimidation and severe humiliation. When I (Plaintiff) tried to ask questions or speak, Mark repeatedly cut me off and proceeded to insult me and put me down in front of several nearby employees and a woman waiting to be interviewed for a job. Mark accused me of not caring about my job, not taking the EAP seriously and making excuses before stating "I need to walk away before I say something I regret". He then stormed off and left me standing alone in his office where I broke down in tears and then went to the restroom where I began hyperventilating and passed out from an anxiety attack.

5.17    On January 10, 2019 at 8:24am, I (Plaintiff) text Robert a lengthy text message explaining what had occurred between Mark and I (Plaintiff) the day prior and expressed how disrespected, worthless and humiliated Mark made me feel following the incident and I (Plaintiff) also made him aware of what happened in the restroom afterwards. Robert and I (Plaintiff) met at approximately 8:30am to discuss the incident further. Robert told me that he attempted to explain to Mark that it was his fault that I (Plaintiff) was unable to leave in the middle of our client meeting right away however, Mark accused him of lying and "just trying to have her back".

5.18    When I (Plaintiff) asked Robert if I (Plaintiff) still had a job since Mark made it sound as if I (Plaintiff) was being terminated for failing to comply with the EAP referral by January 9, 2019, Robert replied, "no, he doesn't have the authority to fire you, you're my employee not his so only I can make that call". Robert also let me know that Mark encouraged him to terminate my employment following the

January 9, 2019 incident, however Robert refused which infuriated Mark even more. From that day forward I (Plaintiff) was no longer allowed to speak to Mark directly, and Mark made no effort or attempt to speak to me going forward.

5.19    This conduct pursued by Mark on January 9, 2019 caused me to feel offended, humiliated, uncomfortable, bothered, anxious, depressed, afraid, insecure, angry, intimidated, under pressure and emotionally unstable, and aggravated my mental conditions. Mark was never disciplined or reprimanded for his actions despite several executives being aware of his actions towards me.

5.20    Additionally, Mark's insult towards me where he stated "you don't care about your job" was completely untrue as each time I (Plaintiff) sought help from a medical professional between 2012 through 2018, the main complaint was always work related. It was important for me to perform at my best and when I (Plaintiff) felt that I (Plaintiff) wasn't, I (Plaintiff) would attempt to seek help, and I (Plaintiff) was also more than capable of seeking help on my own in December 2018 and January 2019, without Moda trying to dictate my mental health treatment.

5.21    On February 20, 2019, I (Plaintiff) received a text message from Robert requesting to meet that afternoon and gave no details to what the meeting would consist of. When I (Plaintiff) arrived at his office, I (Plaintiff) was greeted by Robert and Mary Lou True, and was told by Robert that I (Plaintiff) was being terminated for failure to meet the EAP expectations and non-compliance with a formal EAP referral.

5.22    I (Plaintiff) attempted to explain to Robert that I (Plaintiff) had informed him several weeks ago of the outcome of my first appointment with an EAP counselor, who told me that she was unable to help me with my ADHD concerns as she did not specialize in that condition and she was under the impression that I (Plaintiff) was being referred to her for depression and/or family and home issues, so I (Plaintiff) made the decision to forgo the remaining two counseling sessions required as part of the referral, and schedule appointments with my own provider, to which he didn't object to at the time.

5.23    I (Plaintiff) also commented on my PIP and advised Robert that I (Plaintiff) had been making improvements on my performance and meeting all the expectations, and that this was evident because my colleagues have begun trusting me again and I've (Plaintiff) been assigned to many projects that were previously taken away from me due to my recent dip in performance, and given many new projects as well. Robert also did not respond to this.

5.24    Mary Lou True was present during my termination meeting to represent Human Resources due to Mark's refusal to speak with me because he was angry and upset that I (Plaintiff) was not completing the EAP counseling sessions quickly enough despite no exact due date given to me verbally or in writing for completing the 3 counseling sessions. Mary Lou True handed me my termination letter which stated that I (Plaintiff) was being terminated effective February 20, 2019 due to, "your inability to meet performance expectations following placement on a performance improvement plan". The decision to terminate my employment was made by Mark.

5.25    I (Plaintiff) never received proper closure to my PIP, and was never told whether I had met or failed to meet the conditions of my PIP following the sixty day duration. Throughout the duration of the PIP, Mark has never requested an update on my performance from Robert, or met with me personally to provide feedback on my performance or progress. My performance or PIP was not addressed or taken into consideration during the termination meeting by Robert or Mary Lou True on February 20th, and instead, the focus was my non-compliance with Moda's mandatory EAP referral, despite the reason given for dismissal as stated in my termination letter.

5.26    Moda's reason for terminating my employment was a pretext for discrimination. The verbal reason I was given for my termination (failure to comply with a mandatory EAP referral) conflicts with the reason given in my termination letter (failure to meet performance expectations following placement on a PIP). Additionally, my PIP does not list "EAP Counseling", "Formal EAP Referral" or any counseling requirement anywhere throughout the document.

5.27    My job was tied to my identity, reputation, sense of worth and sense of purpose. As a direct result of Moda's unlawful discriminatory practices, I (Plaintiff) have suffered and will continue to suffer mental, psychological, moral and emotional pain, anguish and distress; and I (Plaintiff) have sustained a loss of happiness, and a loss of the capacity to enjoy life and professional endeavors.

5.28    As a consequence of Moda's unlawful employment practices and the resultant aggravation of my mental conditions and emotional injuries, I (Plaintiff) have also suffered from severe depression, leading to strained friendships, estranged family members, and failed relationships. This entire ordeal has essentially destroyed my life.

5.29    On December 17, 2019, I (Plaintiff) filed a charge with the EEOC asserting that Moda violated the ADA by failing to provide a reasonable accommodation for my ADHD, a mental condition that Moda was fully aware of, and for violating the ADA by requiring me to seek mental health counseling through the EAP as a condition for my employment, which violates the provisions of treating an employee as if they have a disability and demanding that employees undergo medical examinations.

5.30    On July 24, 2020, the EEOC mailed a notice of rights to sue letter relating to my complaints of discrimination under the ADA.

5.31    On July 27, 2020, I (Plaintiff) received my notice of rights to sue letter from the EEOC, thus officially starting the 90 day countdown to file a complaint.

5.32    I (Plaintiff) have filed this action within the 90 day period permitted under Federal law, 42 U.S.C 2000e-5(f).

# Count I

## Violations of the American with Disabilities Act

(Defendant's Violation of the Provisions Regarding Certain Medical Examinations and Inquiries)

6.1     I (Plaintiff) incorporate by reference paragraphs 1.1 through 5.32 as fully set forth herein.

6.2     The ADA prohibits employers from demanding that employees undergo medical examinations unless such examinations are shown to be "job related and consistent with business necessity." 42 U.S.C § 12112(d)(4). The regulations promulgated under the ADA confirms that medical examinations and medical inquiries must be "job related and consistent with business necessity." 29 C.F.R. § 1630.14. Mandatory physiological counseling constitutes a medical examination and therefore could violate the ADA unless it is "job related and consistent with business necessity". See, *Kroll v. White Lake Ambulance Auth., 691 F.3d 809, 819 (6th Cir. 2012).*

6.3     The ADA also prohibits an employer from making inquiries as to whether an employee is an individual with a disability, unless such inquiry is shown to be job related and consistent with business necessity.

6.4     The EEOC has issued guidance on medical examinations and inquiries that expand upon the meaning of "job related". The guidance issued by the EEOC states that before a medical or psychological examination can be mandated by an employer, the employer must have reasonable belief, based on objective evidence, that the employee will be unable to perform the essential functions of his/her job or that the employee will pose a direct threat. Medical or psychological inquiries must be designed to allow the employer to determine the effects of medical or psychological conditions on the employee's ability to perform the job.

6.5     The EEOC guidance document is available to employers and other interested persons. See, EEOC Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the American with Disabilities Act (July 26, 2000) ("EEOC Guidance") available at www.EEOC.gov/laws/guidance/enforcement-guidance-disability-related-inquiries-and-medical-examination-employees. See also, EEOC Compliance Manual, § 2.11(B)(8)(May 12, 2000), online at www.eeoc.gov/laws/guidance/section-2-threshold-issues#2-II-B-8.

6.6     The ADA protects employees from adverse employment actions stemming from their refusal to submit to medical inquiries and/or medical or psychological exams that are prohibited by the ADA, whether or not they are "persons with a disability". See, EEOC Guidance, General Principals, Section B and *Conroy v New York State Dept. of Correctional Services, 333 F.3d 88, 94-95 (2nd Cir. 2003).*

6.7     Defendant violated the ADA by engaging in the following conduct:

      A.   Requiring me (Plaintiff) to undergo psychological examinations, counseling and inquiries that were neither job related nor consistent with medical necessity;

      B.   Compelling me (Plaintiff), upon penalty of the loss of my job, to participate in counseling; and

    C.   Ultimately terminating me (Plaintiff) for refusing to participate in the unlawful medical examinations and inquiries and for refusing to participate in the counseling.

    D.   I (Plaintiff) was damaged as a result of defendant's violations of the ADA.

6.8    As a direct result of defendant's unlawful employment practices, I (Plaintiff) sustained a loss of earnings. Defendant is liable to me for back and future pay.

# Count II

## Violations of the Americans with Disabilities Act

### (Retaliation for Plaintiff's Refusal to Submit to an Unlawful Examination)

7.1    I (Plaintiff) incorporate by reference paragraphs 1.1 through 6.8 as fully set forth herein.

7.2    The ADA prohibits an employer from "discriminating against any individual because such individual has opposed any act or practice made unlawful by [the ADA]..." 42 U.S.C. § 12203(a).

7.3    I (Plaintiff) engaged in protected opposition when I (Plaintiff) refused to submit to the medical examination that was unlawful under the ADA.

7.4    I (Plaintiff) suffered an "adverse employment action" and suffered damages when my employment was terminated by the defendant.

7.5    A causal connection exists between my protected activity and my termination by the defendant because the defendant has acknowledged on December 18, 2018 and February 20. 2019 that I (Plaintiff) was compelled to participate in medical examinations and inquiries as a condition to my continued employment.

7.6    As a direct result of defendant's unlawful employment practices, I (Plaintiff) sustained a loss of earnings. Defendant is liable to me for back and future pay.

# Count III

## Violations of the Americans with Disabilities Act

### (Defendant's Discrimination on the Basis of a Perceived Disability)

8.1    I (Plaintiff) incorporate by reference paragraphs 1.1 through 7.6 as fully set forth herein.

8.2     The ADA generally prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures [and] hiring." 42 U.S.C. § 12112(a). Paragraph (1) of § 12102 defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities"; "(B) a record of such an impairment"; or "(C) being regarded as having such an impairment."

8.3     The ADA protects employees who are regarded and treated as though they have a substantially limiting disability, even though they may not have such an impairment.

8.4     The ADA protects both individuals with a disability and individuals who are treated as if they have a disability. In 2000, the EEOC noted in an informal discussion letter that requiring an employee to use an EAP may violate the prohibition of treating an employee as if they have a disability, and employers who choose to take action, such as termination against an employee who refuses an EAP referral or does not comply with treatment, may be in violation of the ADA statute that protects individuals who either have or are perceived to have a disability, including a mental disability. See, EEOC Informal Discussion Letter, Christopher J. Kuczynski, Assistant Legal Counsel, ADA Policy Division, Equal Employment Opportunity Commission, (July 19, 2000) available at, https://www.eeoc.gov/foia/eeoc-informal-discussion-letter-7.

8.5     The EEOC Informal Discussion Letter also states that an employer may not treat an individual with a disability less favorably than it treats similarly situated individuals without disabilities. Thus, the employer may not discipline an individual with a disability for conduct or performance problems if it does not impose similar discipline on other employees with similar problems. Likewise, the employer may not force the individual with a disability to choose between treatment or EAP participation and discipline in situations where other employees would not be disciplined.

8.6     Defendant violated the ADA by engaging in the following conduct:

    A.  Requiring me (Plaintiff) to comply with a formal referral to the EAP that was neither job related nor consistent with business necessity, and was made on the belief that I (Plaintiff) was suffering from depression;

    B.  Defendant did not focus on my (Plaintiff) job performance, but rather on a perceived medical condition when making the mandatory EAP referral;

    C.  Compelling me (Plaintiff), upon penalty of the loss of my job, to participate in EAP counseling that would not have been imposed on other employees who are also placed on a PIP, or their first form of disciplinary action due to scoring low on an annual performance evaluation; and

    D.  Ultimately terminating me (Plaintiff) for refusing to participate in the formal EAP referral.

    E.  I (Plaintiff) was damaged as a result of defendant's violations of the ADA.

8.7     As a direct result of defendant's unlawful employment practices, I (Plaintiff) sustained a loss of earnings. Defendant is liable to me for back and future pay.

# Count IV

## Violations of the Americans with Disabilities Act

(Defendant's Violations of the Provisions Regarding Reasonable Accommodation Requests)

9.1     I (Plaintiff) incorporate by reference paragraphs 1.1 through 8.7 as fully set forth herein.

9.2     The ADA protects employees from job discrimination on the basis of a disability. Under the ADA, employers are required to provide reasonable accommodation to an employee or job applicant with a disability, unless doing so would cause significant difficulty or expense for the employer ("undue hardship").

9.3     When an employee requests a reasonable accommodation in response to the employer's discussion or evaluation of the person's job performance, the employer may proceed with the discussion or evaluation but also should begin the "interactive reasonable accommodation process" by discussing with the employee how the disability may be affecting performance and what accomodation the employee believes may help to improve it.

9.4     Employers cannot refuse to discuss the request or fail to provide a reasonable accommodation as punishment for the performance problem. If a reasonable accommodation is needed to assist an employee in addressing a performance problem and the employer refuses to provide one, absent undue hardship, the employer has violated the ADA. See, EEOC Guidance on Applying Performance and Conduct Standards to Employees with Disabilities under the American with Disabilities Act (September 3, 2008) available at https://www.EEOC.gov/laws/guidance/applying-performance-and-conduct-standards-employees-disabiliti es.

9.5     An employee's delay in requesting an accommodation does not justify an employer's refusal to provide one. If a reasonable accommodation will help improve the employee's performance (without posing an undue hardship), the accommodation must be provided.

9.6     Requests for reasonable accommodation should be handled expeditiously, in particular because unnecessary delays in determining or providing an effective accommodation may violate the ADA.

9.7     I (Plaintiff) was a qualified individual with a diagnosed disability; which Moda (both Robert and Mark) were both made aware of; and failed to reasonably accommodate my disability. Relevant to the third element is an employer and employee's respective cooperation in the required interactive process to determine a reasonable accommodation.

9.8     Moda failed to engage in the required interactive process to determine a reasonable accommodation with me and should have granted me the accommodation (desk move) it suggested to me on or around September 2018 for my mental disability instead of waiting until after sixty days to determine if I've (Plaintiff) met or failed my PIP obligations.

9.9     I (Plaintiff) was damaged as a result of defendant's violations of the ADA.

9.10    As a direct result of defendant's unlawful employment practices, I (Plaintiff) sustained a loss of earnings. Defendant is liable to me for back and future pay.

# Prayer for Relief

WHEREFORE, I, Plaintiff, Nisa T. Toum, respectfully requests this Court to enter a judgment in my favor and against defendant as follows:

**A.  Legal Relief**

1.  Compensatory damages in whatever amount I am found to be entitled;

2.  Punitive damages in whatever amount I am found to be entitled;

3.  Back pay and front pay, including the value of fringe benefits and lost;

4.  Damages for mental and emotional pain and suffering, inconvenience and mental anguish, including loss of enjoyment of life, humiliation and embarrassment; and

5.  An award of interest, costs and fees to be incurred in this suit.

**B.  Equitable Relief**

1.  An order prohibiting defendant from requiring its employees to undergo medical or psychological examinations without proof the examinations are job related and consistent with business necessity;

2.  An order requiring defendant to review all EAP materials, policies, and supervisor training on the proper circumstances and procedures for making an EAP referral;

3.  An injunction prohibiting defendant from any further acts of wrongdoing, discrimination or retaliation against its employees; and

4.  Whatever other equitable relief appears appropriate at the time of final judgment.

EEOC Form 161 (11/16)



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Nisa Toum**<br>**17500 NE 38th Way**<br>**Vancouver, WA 98682** | From: | **Seattle Field Office**<br>**909 First Avenue**<br>**Suite 400**<br>**Seattle, WA 98104-1061** |
|---|---|---|---|

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **551-2020-00945** | **Isabel Jeremiah,**<br>**Investigator** | **(206) 220-6936** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

For _____   July 24, 2020

**Nancy A. Sienko,**
**Director**

*(Date Mailed)*

Enclosures(s)

cc:

**MODA HEALTH SERVICES LLC**
**Attn: Thomas Bikales, General Counsel**
**601 SW 2nd Avenue**
**Portland, OR 97204**

Received: July 27, 2020

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the charge.  Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

Received: July 27, 2020

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**    The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability.  *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)),  **"major life activities"  now include the operation of major bodily functions,** such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

➢ **Only one** major life activity need be substantially limited.

➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active.**

➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:  Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*  For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

Received: July 27, 2020



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**CHARGE OF DISCRIMINATION**

For Official Use Only – Charge Number:

EEOC Form 5A (October 2017)

| **Personal Information** | First Name: Nisa    MI: T    Last Name: Toum <br> Address: 17500 NE 38th Way    Apt.: <br> City: Vancouver    County: Clark    State: WA  Zip Code:98682 <br> Phone: 971-348-8628 Home ☐  Work ☐  Cell ☒  Email: nisapdx@gmail.com |
|---|---|
| **Who do you think discriminated against you?** | Employer ☒    Union ☐    Employment Agency ☐    Other Organization ☐ <br> Organization Name: Moda Health Plans, Inc. <br> Address: 601 SW 2nd Ave    Suite: 7 <br> City: Portland    State: OR   Zip Code: 97204  Phone: 503-228-6554 |
| **Why you think you were discriminated against?** | Race ☐    Color ☐    Religion ☐    Sex ☐    National Origin ☐    Age ☐ <br> Disability ☒  Genetic Information ☐  Retaliation ☐  Other ☐(*specify*) |
| **What happened to you that you think was discriminatory?** | Date of <u>most recent job action</u> you think was discriminatory: February 20, 2019 <br> Also describe briefly <u>each job action</u> you think was discriminatory and when it happened (estimate). <br><br> 1. I believe I was wrongfully terminated on February 20, 2019 from my former position at Moda Health Plans, Inc. and that they had violated the federal law against disability discrimination under the ADA by doing so. My official termination letter from Moda states that my employment was terminated due to "not meeting performance expectations following placement on a Performance Improvement Plan (PIP)", however that was not the reason I was verbally given by Moda, and I was actually due to non-compliance with a mandatory EAP referral that was made by HR This referral was not made for a legitimate business purpose, nor was it job related. Moda did not take into account my job (cont. pg3) |
| **Signature and Verification** | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures. <br><br> I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my allegations and my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, or opposing job discrimination. <br><br> **I declare under penalty of perjury that the above is true and correct.** <br> **Signature:** _____    **Date:** 12-17-2019 |

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

  **1. FORM NUMBER/TITLE/DATE.** EEOC Form 5A, Charge of Discrimination, Issued October 2017.

  **2. AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117**,** 42 U.S.C. 2000ff-6.

  **3. PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

  **4. ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

  **5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging party and respondent and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of rights under the Act.

..... (cont.) performance when mandating the referral, but rather based it on a perceived medical condition where they assumed I was depressed after I had opened up to my former boss about personal challenges I was dealing with at the time, and it is my understanding that the ADA protects both individuals with a disability and individuals who are treated as if they have a disability. I was not opposed to accepting help, but I wanted to control my treatment options and have the ability to choose my own provider outside of the EAP network as they had no providers available to help me with my specific concerns.


2. In addition, on February 20, 2019 I believe that Moda was in violation of the ADA as they fail to provide a reasonable accommodation for a mental disability that I have and they were fully aware of. I was diagnosed with Attention Defecit Hyperactivity Disorder (ADHD) in July of 2018, which was not a secret to my former boss and HR as it had a pretty significant impact on my performance throughout 2018, hence why I was placed on a PIP and I had also chose to voluntarily disclosed my diagnosis to them. My former boss had proposed a desk move for me (which I accepted) in order to help minimize distractions around me as I was having difficulty focusing on my work at my current desk and would often work in meeting rooms around the building because I needed the quiet space. I was advised that I'd be able to move desks at the end of 2018. During a meeting with HR and my former boss to go over the conditions of my PIP, I learned that I was required to remain at my current work station during business hours and I was no longer able to work in other rooms around the building. I questioned this as I was concerned about the impact this would have on my ADHD symptoms and ability to meet the conditions of my PIP, so I questioned if I'd still be able to move desks because of my ADHD and was told no, and that this was no longer an option for me until I successfully follow through and meet all the conditions of my PIP. On February 20th I was pulled into a meeting in order to discuss the outcome of my PIP and to re-evaluate my annual performance evaluation, and this is when I am made aware of my release from employment due to non-compliance with HR's mandatory EAP referral. It is my understanding that the ADA includes ADHD as a recognized disability, which would require employers to provide reasonable accommodations to an ADHD employee, as long as it doesn't create undue hardship for the business. When my former boss had proposed moving desks, I indicated that the accommodations would be extremely helpful as I can better manage my symptoms and it would  allow me to improve my performance. I have documentation from my diagnosis which clearly indicates that my ADHD substantially limits several major life activities for me both in and outside of the workplace. I was also very open about my ADHD diagnosis and the challenges I struggled with due to the symptoms to my former boss, which is why he had offered me the reasonable accommodation (moving desks).