**Andrew M. Schpak,** OSB No. 044080
aschpak@barran.com
**Natalie Pattison,** OSB No. 204214
npattison@barran.com
Barran Liebman LLP
601 SW Second Avenue, Suite 2300
Portland, Oregon 97204-3159
Telephone: (503) 228-0500
Facsimile No.: (503) 274-1212
Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

NISA T. TOUM,

              Plaintiff,

      v.

MODA PARTNERS, INC., MODA INC., dba
MODA HEALTH, MODA HEALTH
SERVICE and MODA HEALTH PLAN, INC.,

              Defendants.

**Case No. 3:20-cv-01832-MO**

**DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

**(Oral Argument Requested)**

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I.  LR 7 -1 COMPLIANCE............................................................................................1
II.  MOTION ............................................................................................................1
III.  MEMORANDUM OF POINTS AND AUTHORITIES .......................................1
   A.  Background ......................................................................................................1
      1.  Ms. Toum discloses a disability and Moda provides accommodations.............2
      2.  Ms. Toum's performance drastically declined over the last 18 months of
         her employment ...........................................................................................3
      3.  Ms. Toum received low scores on her 2018 Performance Appraisal, which
         triggered automatic placement on a PIP......................................................4
      4.  Ms. Toum was required to complete a referral to Moda's EAP .......................6
      5.  Ms. Toum's performance problems continued even after being placed on
         the PIP......................................................................................................10
   B.  Legal Standard..............................................................................................11
   C.  Argument........................................................................................................12
      1.  Moda did not require Plaintiff to submit to a prohibited medical
         examination.............................................................................................12
      2.  Moda did not retaliate against plaintiff for opposing and unlawful
         employment practice or for requesting a reasonable accommodation............16
      3.  Moda did not discriminate against Plaintiff because of an alleged disability
         or perceived disability ...............................................................................17
         a.  Plaintiff cannot establish a prima facie case of disability
            discrimination ..................................................................................17
         b.  Plaintiff cannot show Moda's legitimate nondiscriminatory reason
            for her termination was a pretext for disability discrimination...........21
            1.  Plaintiff was terminated for a legitimate nondiscriminatory
               reason ......................................................................................21
            2.  Plaintiff cannot show that the stated reasons for her
               termination are a pretext for disability discrimination.............22
      4.  Moda met its obligations under the ADA to engage in the interactive
         process and provide reasonable accommodations ...........................................24
         a.  Mr. Judge engaged in the interactive process with Plaintiff .................24
         b.  Moda provided plaintiff reasonable accommodations..........................26
  IV.  CONCLUSION....................................................................................................27

**BARRAN LIEBMAN LLP**
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500 FAX (503) 274-1212

# TABLE OF AUTHORITIES

Page

**Cases**

*Amerson v. Clark Cty.*, 995 F. Supp. 2d 1155 (D. Nev. 2014) ...................................................... 18

*Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293 (9th Cir. 1981) ................................................ 23

*Aragon v. Republic Silver State Disposal*, 292 F.3d 654 (9th Cir. 2002) ..................................... 21

*Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130 (7th Cir. 1996) ............................................. 25

*Blocle v. Solis*, 436 Fed. Appx. 777 (9th Cir. 2011) ...................................................................... 22

*Dark v. Curry County*, 451 F.3d 1078 (9th Cir. 2006) ................................................................. 18

*Dundee v. Lynce*, No. 20-3836, 2021 U.S. App. LEXIS 5732 (6th Cir. Feb. 25, 2021) .. 13, 14, 15

*EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943 (7th Cir. 2001) ................................................ 19

*Emeldi v. Univ. of Ore.*, 673 F.3d 1218 (9th Cir. 2012) ............................................................... 16

*Fredenburg v. Contra Costa County Dept. of Health Services*, 172 F.3d 1176 (9th Cir. 1999) .. 13

*Hashzmoto v. Dalton*, 118 F.3d 671 (9th Cir. 1997) ..................................................................... 23

*Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128 (9th Cir. 2001) ............................................... 25

*Indergard v. Georgia-Pacific Corp.*, 582 F.3d 1049 (9th Cir. 2009) ............................... 13, 14, 15

*Keenan v. Allan*, 91 F.3d 1275 (9th Cir. 1996) ............................................................................ 11

*Kelley v. Amazon.com, Inc.*, 2013 U.S. Dist. LEXIS 166534 (E.D. Wash. Nov. 21, 2013) ......... 18

*Kennedy v. Applause*, 90 F.3d 1477 (9th Cir. 1996) ..................................................................... 18

*King v. C&K Mkt., Inc.*, 2020 U.S. Dist. LEXIS 154320 (E.D. Cal. Aug. 25, 2020) ................... 18

*Kroll v. White Lake Ambulance Auth.*, 691 F.3d 809 (6th Cir. 2012) .................................... 13, 14

*Lindsey v. Shalmy*, 29 F.3d 1382 (9th Cir.1994) .......................................................................... 23

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500 FAX (503) 274-1212

*Magana v. Commonwealth of the Northern Mariana Islands*, 107 F.3d 1436 (9th Cir.1997) ..... 23

*Mdamu v. Am. Traffic Sols. Inc.*, No. CV-15-00326-PHX-DLR, 2016 U.S. Dist. LEXIS 83725
    (D. Ariz. June 24, 2016) ......................................................................................................... 19

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.,* 210 F.3d 1099 (9th Cir. 2000) ........ 11

*Puletasi v. Wills*, 290 F. App'x 14 (9th Cir. 2008) ........................................................................ 18

*Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233 (9th Cir. 2012) ............................... 19

*Snapp v. United Transp. Union*, 889 F.3d 1088 (9th Cir. 2018) .................................................... 24

*Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080 (9th Cir. 2001) ........................................ 18

*Stamper v. Salem-Keizer Sch. Dist.*, 195 Or. App. 291, 97 P.3d 680 (2004) ............................... 24

*T.B. v. San Diego Unified Sch. Dist.*, 806 F.3d 451 (9th Cir. 2015) ............................................. 16

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989) ............................................................................... 23

*United States EEOC v. Dillard's Inc*., 2012 U.S. Dist. LEXIS 16945
    (S.D. Cal. Feb. 9, 2012) ................................................................................................. 14, 15

*White v. TA Operating Corp.*, No. 06-1747-AA, 2008 U.S. Dist. LEXIS 48103
    (D.Or. June 19, 2008) ..................................................................................................... 22, 23

*Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080 (9th Cir. 2002) ........................................ 24, 25, 26

**Other Authorities**
29 C.F.R. § 1630.2(o)(3) .............................................................................................................. 24
29 C.F.R. Pt. 1630, App. § 1630.2(n) ......................................................................................... 19
29 CFR § 1630.2(o) ..................................................................................................................... 26
42 U.S.C. § 12112(d)(4)(A) .............................................................................................. 12, 13, 14
42 U.S.C. § 12111(8) .................................................................................................................... 18
42 U.S.C. § 12112(d) ................................................................................................................... 14
42 U.S.C. § 12203 ........................................................................................................................ 16

**Rules**
Fed. R. Civ. P. 56 ............................................................................................................................ 1
Fed. R. Civ. P. 56(a) .................................................................................................................... 11

Page iii – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.    LR 7 -1 COMPLIANCE

Pursuant to Local Rule 7-1, counsel for Defendants Moda Partners, Inc., Moda Inc. dba Moda Health, Moda Health Service and Moda Health Plan, Inc. (collectively, "Moda" or "Defendants") states that they have made a good faith attempt through email correspondence with opposing counsel to resolve the issues in this motion, but have been unable to do so.

## II.    MOTION

Defendants respectfully move the court for summary judgment in favor of Defendants and against Plaintiff Nisa T. Tom ("Plaintiff ") on all counts. This Motion is made pursuant to Fed. R. Civ. P. 56 and LR 56.

## III.    MEMORANDUM OF POINTS AND AUTHORITIES

### A.    <u>Background</u>

Plaintiff was employed by Moda in a variety of different positions starting when she was first hired on September 12, 2011, until her employment with Moda was terminated on February 20, 2019, for failing to comply with the requirements of her Performance Improvement Plan ("PIP") and not making the improvements necessary to perform the requirements of her position, including failure to follow reasonable rules and expectations of her Employee Assistance Program ("EAP") referral. (Declaration of Robert Judge in Support of Defendants' Motion for Summary Judgment ("Judge Decl."), ¶¶ 16-17; Videotaped Deposition of Nisa Towry Toum ("Toum Depo") at 59:6-60:6.)[1] Plaintiff's final position at Moda was as an Account Services Coordinator for Pharmacy Services. (Toum Depo at 29:17-20.) In her deposition, Ms. Toum described her job duties as follows:

> I was responsible for supporting our senior account executives that worked on our pharmacy line of business. And combined between them they have about large group accounts, and the accounts require a lot of high-touch service. And so I was responsible for reporting on a weekly, biweekly, monthly, quarterly basis, overseeing contracts, renewals, negotiations, amendments and also responding to

---

[1] Excerpts and exhibits from the transcript of Plaintiff Nisa Toum's deposition are attached to the Declaration of Andrew M. Schpak as Exhibit 1.

PAGE 1 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

any client request and assisting with implementation of RFPs. And I was also the point of contact for most of the groups and also our accounting department, reporting department and customer service.

And I would participate in business planning sessions and also the steering committee meetings that we'd have every week with the Northwest Prescription Consortium. And then I also had responsibilities with one group in -- on the medical side because I had been with them for -- doing their pharmacy when they added medical, and I was asked to stay on the account when the former account executive had left and so I supported that group as well. And then I was also responsible for overseeing the clinical calendar and the pharmaceutical industry contracts relations and rebates, financials and just general reporting.

(Toum Depo at 29:22–30:22.)

1.    **Ms. Toum discloses a disability and Moda provides accommodations.**

Ms. Toum recalls first disclosing her ADHD diagnosis to her supervisor, Robert Judge, in August of 2018. (Toum Depo at 89:6-90:19.) On September 14, 2018, Ms. Toum told Mr. Judge via text message that she had been diagnosed with ADHD and that she had been without medication for a couple months. (Toum Depo at 89:22–90:3; Toum Depo at Ex. 7, p. 19.) Mr. Judge replied, saying, "I want to be as helpful as I can be to support you. We all want to. When you are on, you are on and are terrific. I want to help you get back to that place. If you need to take the PTO please do so. Please find 30 minutes on my calendar Monday so we can talk and get a plan together. Thank you." (*Id.*)

A few days later, Mr. Judge followed-up with Ms. Toum, asking her to find a time on his calendar so they could continue the discussion they were having on September 14, 2018. Ms. Toum does not remember following up or meeting with Mr. Judge following this conversation. (Toum Depo at 92:3-5.) On September 17, 2018, Ms. Toum told Mr. Judge she could not meet with him because she made an urgent-care appointment for that afternoon. (Toum Depo at 92:19-24.) Despite this assertion, in her deposition, Ms. Toum admitted she did not actually attend an urgent-care appointment that afternoon. (Toum Depo at 93:3-5.)

On November 19, 2018, Ms. Toum told Mr. Judge she was running late because she needed to pick up her ADHD medication at the drug store. (Toum Depo at 93:17–95:6.) In her deposition,

Page 2 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Ms. Toum admitted she was dishonest with Mr. Judge about her reason for running late; she did not, in fact, have a prescription ready for pick up at the drug store that day. (Toum Depo at 93:17-22.)

Ms. Toum acknowledges that she was never denied permission by Moda to go to an appointment. (Toum Depo at 36:1-4; 91:12-14.) Mr. Judge accommodated Ms. Toum in numerous other ways, including allowing her to work remotely, come to work late and/or leave work early without having to take PTO, and work in other areas of the building. (Toum Depo at 23:6-19; 19:1-20; 36:1-4; 152:10-13; 143:3-11; 164:11-23; 201:1-5.) When asked what accommodations Ms. Toum desired, she testified in her deposition that allowing "a remote work schedule or allow me to work permanently from home a few times a week maybe or – and then also hiring an assistant to kind of backfill the two former positions that I had been promoted from and had never gotten backfilled . . ." (Toum Depo at 22:20-25.) But Ms. Toum admits that she can't recall a time Mr. Judge or Kristin Sisourath (her coworker that she primarily worked with) ever told her she could not work remotely. (Toum Depo at 23:6-19.) Ms. Toum further concedes that she was allowed to work in other areas of the building that were not her assigned desk as long as she communicated that to her team. (Toum Depo at 164:11-23; 201:1-5.)

2.   **Ms. Toum's performance drastically declined over the last 18 months of her employment.**

Ms. Toum admits that she had a hard time starting and finishing projects, was late to a lot of meetings, and struggled to maintain proper communication. (Toum Depo at 31:16–32:7.) Ms. Toum also acknowledges that, towards the end of her employment at Moda, she "didn't have the motivation to do the work." (Toum Depo at 37:12-22.)

In or around October 26, 2017, Ms. Toum failed to communicate the status of projects and next steps for completing the projects as it related to her job duties regarding preparing member communication materials, handouts, and pamphlets for Moda's upcoming annual fall benefit fairs. (Toum Depo at 135:1–136:11.) Ms. Toum admitted that it was her fault, and that she "dropped the

Page 3 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ball" on properly submitting the final printing of around 8,000 benefit fair pamphlets to "doc services and then making them aware of the actual date that we would need it" before Ms. Toum left for vacation. (*Id.* at 136:12-25.)

On one occasion in November of 2017, Ms. Toum and her coworker, Ms. Sisourath, were supposed to travel together to a benefits fair in Olympia, Washington as part of their job duties, but Ms. Toum did not show up the morning of the trip, so Ms. Sisourath had to go by herself. (*Id.* at 96:15–97:8.) Ms. Toum sent text messages to Mr. Judge afterwards, admitting "[t]his was completely my fault." (*Id.* at 97:19-23.)

On June 22, 2018, Moda employee Tiks Siao inquired with Ms. Toum regarding the status of drug rebate requests because Ms. Toum forgot to either review or submit the documents to her supervisor for signature. (Toum Depo at 129:2-134:2.) Ms. Toum admits the only reason she completed them when she did was because Ms. Siao followed up and reminded her of this outstanding obligation. (Toum Depo at 133:22-134:2.)

Although, prior to 2018, Ms. Toum generally met the performance expectations of her positions and received positive performance appraisals, these examples highlight the drastic deterioration in her work performance in late 2017 and through 2018. (Toum Depo at 121:11–122:18.)

### 3.    Ms. Toum received low scores on her 2018 Performance Appraisal, which triggered automatic placement on a PIP.

When a Moda employee received an average score of less than 2 in a performance category, that employee is automatically placed on a PIP for "low score on review." (True Decl., ¶ 3.) Typically, the employee's supervisor and a representative from Human Resources meet with the employee to discuss the terms of the PIP and touch base with the employee on what other tools or resources Moda can offer to that employee. (True Decl., ¶ 4.)

In her 2018 Performance Appraisal, Ms. Toum received scores of "needs improvement" in the following areas: performs responsibilities with minimum supervision; meets department

Page 4 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

standards; time management; thoroughness and accuracy in daily work; meets punctuality guidelines; and adheres to all other company policies and procedures. (Toum Depo at 124:16–23; True Decl. ¶ 9, Ex. 2.)  Under Moda's policy, these scores were low enough to trigger an automatic placement on a PIP. (True Decl., ¶ 5; Judge Decl., ¶ 4.)

Accordingly, on December 18, 2020, Ms. Toum was placed on a 60-day PIP due to her poor work performance and failure to meet the expectations of her position. (Schpak Decl., ¶ 3; Toum Depo at 159:22–160:14, Toum Depo, Ex. 11.) Her performance review and PIP outline the following performance issues:

> (1) You have missed important deadlines on multiple occasions. This impacts your team and our clients; (2) You are not communicating the status of your projects which has negatively impacted your teammates causing them to either reset their responsibilities or in some cases assume responsibility for your work; (3) With increasing frequency, you have arrived late at meetings, canceled or not even shown up for meetings. This has caused frustration with your peers; (4) Your quantity of work needs improvement. During the past few months, you have had to be repeatedly reminded about projects and deadlines; (5) The quality of your work has also suffered and your teammates, peers and clients have lost confidence in your work; (6) Recently you rented a car for work through Enterprise and did not return it on time . . . .

(Toum Depo at 160:9-14; Toum Depo Ex. 11.) Ms. Toum's PIP also outlined a number of specific expectations of Plaintiff, including the following: "to be successful, you will need to focus on making sure that you accomplish your responsibilities timely and that you communicate more effectively with your teammates." (Toum Depo at 162:14-23; Toum Depo, Ex. 11.) The PIP also noted, "it is not acceptable to miss deadlines, cancel meetings or not respond to emails and phone calls timely. You are expected to meet all deadlines and respond to all correspondence in a timely manner." (Toum Depo at 160:9-14; Toum Depo, Ex. 11.) After outlining the expectations of the PIP, the PIP included the following statement:

> You need to meet all of the above areas to be successful. If you are able to do so, your performance appraisal will be updated and resubmitted to Human Resources for review. If you are unable to make the necessary improvements, you will be subject to additional disciplinary action, up to and including, termination of employment.

Page 5 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

(*Id.*) Mr. Judge and Mark Timmerman from Human Resources met with Ms. Toum on that date to notify her that her low performance score automatically triggered placement on a PIP and discuss a plan to improve her performance. (Toum Depo at 160:24-161:2.) During the course of this meeting, Ms. Toum disclosed that she was dealing with some personal issues, including helping to care for her grandmother's terminal illness and declining health. (Toum Depo at 100:22-102:6; 167:4-5.) Mr. Judge and Mr. Timmerman told Ms. Toum that in addition to the PIP, they were referring her to Moda's Employee Assistance Program ("EAP") and requiring that she attend three EAP meetings as an additional resource and support tool for her to utilize to help improve her work performance. (Toum Depo at 101:18-25; 110:1-7; 113:25-114:3; 167:1-5.) Notably, Ms. Toum admits that she never told Mr. Timmerman or Mr. Judge that she did not want to participate in the EAP referral. (*Id.* at 111:24-112:6.)

Following this meeting and as a result of Ms. Toum's disclosure about caring for her sick grandmother, Mr. Timmerman also initiated the process for Ms. Toum to be provided with medical leave paperwork she could complete if she wanted to request protected time off to care for her grandmother. (True Decl., ¶ 6.) Human Resources notified Ms. Toum that she was eligible for leave, but Ms. Toum opted not to complete and return the required paperwork and, as a result, the leave request was denied. (Toum Depo at 102:5-18; Toum Depo, Ex. 8.)

    **4.**    <u>**Ms. Toum was required to complete a referral to Moda's EAP.**</u>

After the meeting, Mr. Timmerman followed up with Ms. Toum regarding the mandatory EAP referral. Mr. Timmerman emailed Ms. Toum the following:

> Thank you for meeting with Robert and I this morning to discuss moving forward. I appreciate your willingness to receive the feedback and work towards making the necessary improvements.
>
> As we discussed, I have contacted Unum EAP and you will have to make the initial call to them to meet the requirements we discussed . . .

/ / /

Page 6 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

> **This process will need to be done this week prior to 12/21**. This first call is an intake call where they will ask some questions so they can assign the appropriate counselor to assist you.
>
> After the first call, there will be 3 required contacts to the counselor. They will not share the details of the call, but will let me know if you have or have not met the commitment. The purpose of this is to ensure you are getting the support you need. As things have gotten so out of whack with your work, there will not be an option for you to not complete this process.

(Judge Decl., ¶ 14, Ex. 3 (emphasis in original).)

Under the EAP referral, Ms. Toum was required to complete an intake call, attend three meetings with the EAP provider, and complete a release form that would allow the EAP provider to disclose to Moda whether Ms. Toum had in fact attended all three meetings with the EAP provider. (Toum Depo at 109:6-8; 171:16-22; 172:3-8.) Importantly, Moda did not request, seek, or receive any information from the EAP regarding Ms. Toum's physical and mental conditions or diagnoses. (True Decl., ¶ 7; Judge Decl., ¶ 8.)

Despite Mr. Timmerman's clear instructions, Ms. Toum admits she failed to comply with the December 21, 2018 deadline to complete the intake call. (Toum Depo at 170:18-22.) Instead, Ms. Toum did not complete the intake call until January 3, 2019. (Toum Depo at 176:13-15.) Similarly, she did not timely complete the release of information form or follow Mr. Timmerman's clear instructions on completing the form. (Toum Depo at 176:16-25; 178:1-7; 182:11-14.)

Because Plaintiff was struggling to follow instructions and meet the deadlines associated with the PIP and EAP, Mr. Judge and Mr. Timmerman held a meeting with Ms. Toum on January 2, 2019, to clarify expectations of the PIP and EAP. (Toum Depo at 173:6-9.) Ms. Toum admits that her understanding of the expectations following that meeting were for her to attend the three EAP sessions prior to the end of her 60-day PIP and to submit the completed release form. (*Id*. at 174:5-10.) On January 4, 2019, Mr. Timmerman told Ms. Toum that the EAP had not received the release of information form from Ms. Toum and the EAP had left Ms. Toum a voicemail to discuss further. (Toum Depo at 177:4-12; Toum Depo, Ex. 14.) On January 9, 2019,

Page 7 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

at 9:40am, Mr. Timmerman emailed Ms. Toum because the EAP told him they still had not yet received the required release form and gave the following instructions: "Have you sent the form over to them? Please stop by my office this morning before 11am to sign the form and I will send it over if you have not yet done so." (Toum Depo at 177:16-25; Toum Depo, Ex. 15.) Ms. Toum did not return the form or go to Mr. Timmerman's office by 11:00am as instructed. (*Id.* at 178:5-7; 182:11-14.) Instead, Ms. Toum emailed Mr. Timmerman back at 10:46am saying "I haven't received copies of the forms . . . I will call to follow up today . . . Once I get in touch with someone and ask them to re-forward me the forms . . . ." (*Id.* at 178:8-14; Toum Depo, Ex. 15.) Ms. Toum emailed Mr. Timmerman again at 10:58am saying she was able to obtain a copy of the form and asked whether she should leave the signature area for the Moda representative blank. (Toum Depo at 180:4-24; Toum Depo, Ex. 15.) Notably, the form had been in her SPAM folder all along. (*Id.*) Mr. Timmerman replied to Ms. Toum's email saying, "Yes, this is why I asked you to come to my desk as I have a signed copy. Please come to my desk now as you have missed my 11am deadline. It is aggravating that you continue not to follow my direction." (Toum Depo at 180:20-24.)

On January 10, 2019, Mr. Judge emailed Ms. Toum, inquiring about why Ms. Toum still had not completed the form and again emphasized the need for Ms. Toum to complete the requirements of the EAP referral. (Toum Depo at 175:3-6.) On January 11, 2019, Mr. Judge emailed Ms. Toum, noting that despite clear instructions and communication of the EAP requirements and Mr. Timmerman reaching out to her on January 4th, 9th, and 11th about execution of the release, she still had not completed the form and stated, "In that regard you are out of compliance and viewed as non-responsive." (Toum Depo at 174:15-175:6, Toum Depo, Ex. 13.)

Ultimately, Ms. Toum did not attend all three required EAP meetings. (Toum Depo at 106:12-15.) Ms. Toum had initially scheduled her first EAP session for January 17, 2019, but did not attend that meeting due to a "miscommunication." (Toum Depo at 119:13-25; 190:11-15; 197:2-10.) As a result, it was rescheduled for January 24, 2019. (Toum Depo at 197:2-10.) Despite

Page 8 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

being informed about the requirement that she complete three EAP sessions between December 18, 2018 and February 18, 2018, Ms. Toum did not attend her first (and only) session until January 24, 2019. (Toum Depo at 102:21-25; 197:2-10.)

After her first EAP session, Ms. Toum did not respond to the phone calls or emails that the EAP made to her cell phone and email address. (Toum Depo at 105:15-106:5; 120:8-23.) In her deposition, Ms. Toum testified that after attending one EAP session, she made the decision to continue treatment with a provider outside of the EAP due to the EAP network being limited and because she "made the decision to take control of my health and treatment plan by choosing to see a provider of my own, outside of the EAP." (Toum Depo at 193:8-21; 195:1-11.) Ms. Toum admits that she did not attend another appointment (with the EAP provider or a third party provider of her choosing) during the remaining time window between her first EAP session on January 24, 2019, and her termination on February 20, 2019. (Toum Depo at 105:3-8; 116:4-8; 193:22-194:2.)

Mr. Judge reached out to Ms. Toum numerous times about the status of her EAP referral. (Toum Depo at 172:9-175:16; 177:3-25; 187:2-22; 199:12-22; Judge Decl., ¶ 12.) On January 15, 2019, Mr. Judge sent Ms. Toum a text saying "Please see my Skype message. I am getting inquires about your EAP status, as I told you I would. You haven't sent the update out that I have asked you to do on a least 5 occasions. This is my final request Nisa. Please do so immediately." (Toum Depo at 199:8-18.)

In early February 2019, the EAP notified Moda (through Mr. Timmerman) that the EAP was officially closing Ms. Toum's case as they had made several attempts to contact her and help her continue the program, but Ms. Toum was unresponsive. (True Decl., ¶ 10, Ex. 3.) The EAP sent Ms. Toum a final request that she needed to contact them by February 6, 2019, or she would be considered non-compliant. (*Id.*) After not receiving a response from Ms. Toum by the deadline, the EAP officially closed the case on Ms. Toum's EAP referral. (True Decl., ¶ 10, Ex. 3.)

/ / /

/ / /

Page 9 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**5.     Ms. Toum's performance problems continued even after being placed on the PIP.**

In addition to Ms. Toum's failure to follow Moda's reasonable instructions and expectations with respect to the EAP referral, Ms. Toum's performance issues continued during her 60-day PIP. (Judge Decl., ¶ 13.) On January 15, 2019, Mr. Judge sent Ms. Toum a text around 10:05am asking whether Ms. Toum had come to work yet because he stopped by her desk but it did not look like she had showed up to work yet that today, saying "Recall that I ask you to be there during your work day so we can find you. You may go somewhere else in the building on occasion, but need to request this beforehand." (Toum Depo at 200:7-16.) On January 16, 2019, Mr. Judge sent Ms. Toum a text around 10:56am, asking "Will you be here soon" and following up a short time later saying "We have started the meeting. I expected you in person but now you will be late…we have spoken about this." (*Id.* at 201:6-202:2.) In her deposition, Ms. Toum admitted her general start time was 9:30am and could not provide a reason for being late and/or missing meetings on either of these occasions. (*Id.* at 201:11-23.)

On January 18, 2019, Mr. Judge sent Ms. Toum a text message saying "Kristin is trying to reach you. Please acknowledge. I expect that you should be in the office soon, right?" (*Id.* at 202:8-11.) Ms. Toum did not respond to that message and Mr. Judge sent another text message saying, "You should be available during normal working hours and communicating your status. You know this. Please contact her ASAP and let me know your status. This is an expectation of your PIP." (*Id.* at 203:6-12.) Mr. Judge sent another text message saying "I didn't agree that you would be out of the office without discussion Nisa. We discussed you leaving yesterday but I haven't had an update and now I hear through the grapevine that you are headed to Vancouver. Please give me an update as it feels like an unexcused [sic] absence since you didn't reach out prior." (*Id.* at 203:13-23.) Ms. Toum admits that she failed to show up for work that day without confirming it was okay with Mr. Judge. (*Id.*)

/ / /

Page 10 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On February 18, 2019, Mr. Judge recommended terminating Ms. Toum following the end of her 60-day PIP because Ms. Toum had failed to comply with the expectations of her PIP and had not made the improvement necessary for her to perform all the requirements of her position, including following reasonable rules and expectations of the EAP referral. (Judge Decl., ¶ 16, Ex. 4.)

On February 20, 2019, after the end of plaintiff's 60-day PIP, Ms. Toum had a meeting with Mr. Judge and Ms. True where they informed Ms. Toum that she was being terminated for not meeting performance expectations and for failing to follow reasonable rules and expectations, including but not limited to the expectation that she attend three meetings with the EAP provider. Judge Decl., ¶ 17, Ex. 5.)

## B.   <u>Legal Standard</u>

Summary judgment is appropriate where the moving party shows that no genuine dispute as to any material fact exists and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To carry the burden of production, the moving party "must either produce evidence negating an essential element of the nonmoving party's claim or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.,* 210 F.3d 1099, 1102-03 (9th Cir. 2000). To successfully carry the burden of persuasion, the moving party must show the court that no genuine dispute of material fact exists. *Id.* at 1102. If the moving party does carry the burden of production, then the nonmoving party must identify with reasonable particularity enough evidence supporting its claim to create a genuine dispute of material fact to defeat the motion. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996.) Otherwise, the moving party will win on its motion. *Nissan Fire & Marine*, 210 F.3d at 1103.

/ / /

/ / /

/ / /

Page 11 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

C.      <u>**Argument**</u>

Plaintiff asserts four claims against Moda for violations of the Americans with Disabilities Act ("ADA"). Each of Plaintiff's claims fail as a matter of law and summary judgment should be granted in favor of Moda on all claims.

1.      <u>**Moda did not require Plaintiff to submit to a prohibited medical examination.**</u>

Ms. Toum's first claim for relief alleges that Defendants violated the ADA by requiring her to undergo a medical examination that was neither job related nor consistent with business necessity. This claim fails as a matter of law because Ms. Toum's mandatory EAP referral does not constitute a medical examination under the ADA. Further, even if the EAP was a "medical examination," it was job-related and consistent with business necessity given Plaintiff's poor performance.

In her complaint, Ms. Toum attempts to categorize the EAP referral as a "psychological examination." However, the required EAP referral was intended to serve as a resource to support Plaintiff in order to hopefully improve her work performance. (Judge Decl., ¶ 7.) Moda did not require Ms. Toum to see a particular counselor or specialist, nor did it require her to undergo a particular evaluation or test. (Judge Decl., ¶ 8.) Moreover, Moda did not want to know any information or details about Ms. Toum's engagement with the EAP, and Moda certainly did not seek a diagnosis or recommendation from the EAP at the end of the three sessions. (Judge Decl., ¶ 8.) Instead, all Moda wanted to know was whether Plaintiff attended three meetings with any provider from the EAP. (Judge Decl., ¶ 9.) As a result, Ms. Toum's referral to the EAP does not violate the ADA's prohibition on medical examinations and "inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability." 42 U.S.C. § 12112(d)(4)(A).

The ADA prohibits an employer from "requir[ing] a medical examination" or "mak[ing] inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related

Page 12 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A); *Fredenburg v. Contra Costa County Dept. of Health Services*, 172 F.3d 1176, 1182 (9th Cir. 1999). Although the burden is on the employer to show that a medical examination was consistent with business necessity, the employee bears the burden to prove that a medical examination took place in the first instance. (*Id.*)

To determine what constitutes a medical examination, courts look to the EEOC Enforcement Guidance, which defines the term as "a procedure or test that seeks information about an individual's physical or mental impairments or health." *Dundee v. Lynce*, No. 20-3836, 2021 U.S. App. LEXIS 5732, at *18-19 (6th Cir. Feb. 25, 2021) (citing *Kroll v. White Lake Ambulance Auth.*, 691 F.3d 809, 816-817 (6th Cir. 2012) (*Indergard v. Georgia-Pacific Corp.*, 582 F.3d 1049 (9th Cir. 2009) (quoting Enforcement Guidance on Disability-Related Inquiries and Medical Examinations Under the ADA, available at http://www.eeoc.gov/policy/docs/guidance-inquiries.html). The guidance sets forth a seven-factor test to use when analyzing whether a test or procedure "is likely to elicit information about a disability":

> (1) whether the test is administered by a health care professional; (2) whether the test is interpreted by a health care professional; (3) whether the test is designed to reveal an impairment of physical or mental health; (4) whether the test is invasive; (5) whether the test measures an employee's performance of a task or measures his/her physiological responses to perform the task; (6) whether the test normally is given in a medical setting; and, (7) whether medical equipment is used.

(*Id.*)

In *Indergard v. Georgia-Pacific Corp.*, the court held that a physical capacity evaluation (PCE) required by an employer was a medical examination under the ADA because (1) the occupational therapist conducting the test measured the employee's heart rate and recorded observations about her breathing and aerobic fitness, (2) the occupational therapist interpreted her performance, recommended that she not return to work, and submitted the test results to her treating orthopedic surgeon, and (3) the broad reach of the test was capable of revealing impairments of her physical and mental health. 582 F.3d 1049, 1050 (9th Cir. 2009). The court

Page 13 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

found "the broad reach of the test was capable of revealing impairments of her physical and mental health, particularly in light of Starnes recording Indergard's subjective reports of her current pain level, use of medication and assistive devices, and communication, cognitive ability, attitude, and behavior." (*Id.* at 1055.)

In *United States EEOC v. Dillard's Inc.*, an employer was denied summary judgment on the EEOC's claim that an attendance policy constituted a prohibited inquiry under 42 U.S.C. § 12112(d)(4)(A) where the policy required an employee to disclose the nature of an absence and the condition being treated before categorizing an absence as excused. 2012 U.S. Dist. LEXIS 16945, at *1 (S.D. Cal. Feb. 9, 2012). The court noted that, "[a]lthough the Ninth Circuit has not considered what constitutes an improper 'medical inquiry' under § 12112(d)(4)(A), it has considered when a medical examination under that subsection triggers protections under the ADA" in *Indergard*. (*Id.* at *13-14.) Ultimately, the court held that Dillard's policy must be job-related and consistent with business necessity because it required a "general diagnosis" and specifically required employees to disclose their underlying medical condition. (*Id.* at 15.)

In a recent Sixth Circuit decision, the Court held that an employer's mandatory EAP referral did not constitute a medical examination under the ADA because the employer's intent was to provide support to the employee so that they could fix their work performance, rather than to diagnose a mental disorder. *Dundee v. Lynce*, No. 20-3836, 2021 U.S. App. LEXIS 5732, at *18-21 (6th Cir. Feb. 25, 2021). The court in *Dundee* followed the same analysis as in *Kroll v. Lake Ambulance Auth.*, and honed in on the facts that the mandatory EAP counseling sessions in *Dundee* were triggered by work performance referrals that had nothing to do with suspected mental disabilities. (*Id.*) The counselors in *Dundee* "performed no tests" and did not use medical equipment, nor did they make any diagnoses. (*Id.* at 20.) The court pointed to these factors as determinative when they held that the employer was properly granted summary judgment as to the medical examination claim under 42 U.S.C. § 12112(d). (*Id.* at 21.)

/ / /

Page 14 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Here, there is no evidence that Moda referred Plaintiff to the EAP to determine whether Ms. Toum had a disability or to explore its scope. The EAP referral was not "a procedure or test that sought information about [Plaintiff's] physical or mental impairments or health." Even viewing the evidence in a light most favorable to the plaintiff, the facts show that, like the employer in *Dundee*, Moda had no intention of discovering information about Ms. Toum's disabilities through the EAP referral.

The policy in *Dillard's, Inc.* that required disclosure of diagnosis is distinguishable from Moda's confidential EAP counseling. There was no required disclosure of a medical condition, "brief general diagnosis," or any other information which would be conveyed to the employer that could "tend to reveal a disability." Likewise, Moda sought no "brief general diagnosis" information in the EAP, nor was a diagnosis given. The only disclosure sought was for confirmation that Ms. Toum attended three appointments, which stands in contrast to the facts presented in *Dillard's, Inc.*).

Likewise, the extensive physiological testing done in *Indergard* stands in contrast to the non-diagnostic nature of the counseling EAP in the instant case. Here, Ms. Toum's EAP referral was not designed to reveal information about an impairment—there was no interpretation of any kind of diagnostic, and no information was sent for a secondary analysis. The test at issue in *Indergard* involved many different metrics, and even required *Indergard* to do various activities like run on a treadmill and lift objects, all while the medical professional recorded and analyzed her physiological responses. The "broad reach" of that test stands in stark contrast to the informal and non-diagnostic nature of the required EAP sessions in the instant case.

/ / /

/ / /

/ / /

/ / /

/ / /

Page 15 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff has therefore failed to set forth facts establishing that any aspect of her mandatory EAP referral qualifies as an action prohibited by the ADA. Thus, this claim fails as a matter of law.[2]

### 2.     <u>Moda did not retaliate against Plaintiff for opposing and unlawful employment practice or for requesting a reasonable accommodation.</u>

Plaintiff's second claim for relief alleges Defendants retaliated against her in the terms and conditions of her employment for opposing unlawful employment practices and for requesting a reasonable accommodation. Ms. Toum's claims fail as a matter of law because she did not engage in a protected activity and, even if she did, she cannot show Moda's legitimate reason for her termination was pretext for discrimination.

42 U.S.C. § 12203 makes it an unlawful employment practice for an employer to discriminate against an employee with respect to their employment because the worker has opposed any act or practice made unlawful by the ADA or invoked the protections of the ADA. Ms. Toum alleges that she was terminated because she engaged in protected activity; namely, refusing to complete EAP counseling, which she argues was an unlawful medical examination. In order to survive summary judgment, Ms. Toum must present facts that (a) she was engaged in protected activity, (b) she suffered an adverse action, and (c) there was a causal link between the two. *T.B. v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (citing *Emeldi v. Univ. of Ore.*, 673 F.3d 1218, 1223 (9th Cir. 2012)). Should Ms. Toum make out a prima facie case, the Court would apply the *McDonnel Douglas* burden-shifting framework.

Here, Ms. Toum did not engage in protected activity. In order to constitute "protected activity," Ms. Toum must have opposed an unlawful practice. 42 U.S.C. § 12203 ("No person shall discriminate against any individual because such individual has opposed any act or practice made

---

[2] Even if the Court concludes that the EAP referral was a medical inquiry, Moda has introduced evidence showing that the referral was job-related and consistent with business necessity given Ms. Toum's (admitted) poor performance.

Page 16 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act.") Ms. Toum has offered no evidence that she opposed an unlawful practice. Instead, Ms. Toum claims her EAP referral was an unlawful medical examination under the ADA, but she cannot (and has not) identified what conduct or action she took to "oppose" the EAP referral. To the contrary, Ms. Toum admits that she never told Mr. Judge or Mr. Timmerman that she did not want to participate in the EAP referral. (Toum Depo at 111:24-25; 112:1-6.) In short, Ms. Toum did not voice any opposition to the EAP referral or any other Moda practice. Because she did not engage in any protected activity, her retaliation claim fails.

To the extent Ms. Toum asserts she requested a reasonable accommodation and that constituted protected activity, her claim still fails as a matter of law because Plaintiff has not identified what specific request for reasonable accommodation she made, when she first made it, and how Moda responded to that request in a retaliatory manner. Additionally, the record is devoid of any evidence to establish a causal link between any such request and her termination. In any event, Plaintiff cannot show Moda's reason for terminating her is pretextual as outlined below.

### 3.  Moda did not discriminate against Plaintiff because of an alleged disability or perceived disability.

Plaintiff's third claim for relief alleges that Moda took adverse actions against her because of a disability or perceived disability. This claim likewise fails as a matter of law because Ms. Toum was not regarded as disabled and she was not a "qualified individual" capable of performing the essential functions of her job. Even if she could establish a prima facie case, her claim still fails as a matter of law because she cannot show Moda's legitimate, nondiscriminatory reason for her termination was pretext for discrimination.

### a.  *Plaintiff cannot establish a prima facie case of disability discrimination.*

To establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that (1) she had or was perceived as having a disability; (2) she was qualified; and (3)

Page 17 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

she suffered an adverse employment action because of her disability. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001).

For the purposes of this motion only, Moda will assume that Ms. Toum meets the statutory definition of "having a disability." Even so, Ms. Toum also must have been a "qualified individual with a disability" in order to establish a prima facie case of disability discrimination. A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the *essential functions* of the employment position." 42 U.S.C. § 12111(8) (emphasis added); *see also Puletasi v. Wills*, 290 F. App'x 14, 17 (9th Cir. 2008) (affirming summary judgment for employer on disability discrimination and retaliation claims.)

Importantly, the ADA "does not require an employer to exempt an employee from performing essential functions or to reallocate essential functions to other employees" (citing *Dark v. Curry County*, 451 F.3d 1078, 1089 (9th Cir. 2006). A plaintiff bears the burden of demonstrating she can perform the essential functions of her job with or without reasonable accommodation, *King v. C&K Mkt., Inc.*, 2020 U.S. Dist. LEXIS 154320, at *14-15 (E.D. Cal. Aug. 25, 2020) (citing *Kennedy v. Applause*, 90 F.3d 1477, 1481 (9th Cir. 1996) (plaintiff was not a "qualified individual" where she alleged she had difficulty performing a variety of her essential duties including lifting heavy materials, standing, or stocking items given her litany of injuries); *Amerson v. Clark Cty.*, 995 F. Supp. 2d 1155, 1163 (D. Nev. 2014) (plaintiff was not a "qualified individual" because she could not perform the essential functions of identified open positions, even with reasonable accommodations).

Even if Ms. Toum has a disability, Moda is not required to lower performance standards and expectations that are applied uniformly to employees with and without disabilities. *See Kelley v. Amazon.com, Inc.*, 2013 U.S. Dist. LEXIS 166534, at *24 (E.D. Wash. Nov. 21, 2013); (discussing *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, EEOC Notice No. 915.002, October 17, 2002, available

Page 18 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

at http://www.eeoc.gov/policy/docs/accommodation.html). EEOC guidance notes, "An employee with a disability must meet the same production standards, whether quantitative or qualitative, as a non-disabled employee in the same job. Lowering or changing a production standard because an employee cannot meet it due to a disability is not considered a reasonable accommodation." (*Id.*; 29 C.F.R. Pt. 1630, App. § 1630.2(n) ("It is important to note that the inquiry into essential functions is not intended to second guess an employer's business judgment with regard to production standards, whether qualitative or quantitative, nor to require employers to lower such standards.").)

Additionally, the court's role is "not to second guess the business decisions of a company and inquire as to whether the goals set by management demand 'too much' from its employees." *Mdamu v. Am. Traffic Sols. Inc.*, No. CV-15-00326-PHX-DLR, 2016 U.S. Dist. LEXIS 83725, at *18 (D. Ariz. June 24, 2016). In *Mdamu*, the court held that the employee was not a "qualified individual" because she could not satisfy and maintain productivity and performance standards, which was an essential function of the employee's job. (*Id.* at 17.) The court reasoned that even if the employer's production requirements were not essential functions, plaintiff's claim still fails because it was undisputed that attendance was an essential function on the employee's job, noting, "It is a rather common-sense idea . . . that if one is not able to be at work, one cannot be a qualified individual." (*Id.* at 19) (quoting *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) ("Regular, in-person attendance is an essential function—and a prerequisite to essential functions—of most jobs[.]"). ("[A]n employee who does not come to work cannot perform any of [her] job functions, essential or otherwise.") (*Id.*) (quoting *EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 948 (7th Cir. 2001)). Accordingly, the court held that the employer need not lower its standards to accommodate an employee who does not show up to work, noting that the ADA does not endow all individuals with a disability to a job schedule of their choosing. (*Id.* at 20.) The plaintiff's argument that her disability precluded her from meeting the attendance function of her position was also unavailing, as the court reasoned that the employer was not

Page 19 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

required to give her a free pass for every unplanned absence allegedly caused by her disability. (*Id.* at 21) (internal quotations omitted).

The evidence in the record shows that Ms. Toum was not qualified to perform the essential functions of the job at the time of her termination. While Ms. Toum had performed satisfactory work in the past, she admitted that she was not performing satisfactory work towards the end of her employment. (Toum Depo at 88:8-9; 96:19-97:25; 108:18-25; 121:11-122:18; 124:4-126:25; 133:14-136:25; 142:8-143:25; 161:1-8.) She also admits that she missed work meetings, caused delays in processing check rebates, forgot to accompany a co-worker to a benefits fair, failed to submit the benefit fair print job on time, and was late in providing reports to customers. (*Id.*) Even with Moda providing Ms. Toum a range of accommodations, including but not limited to permission to work remotely, work in other areas of the building, come to work late, and leave early, Ms. Toum still missed important deadlines, meetings, and deliverables, which caused her coworkers, such as Ms. Sisourath, to have to take on more work to make up for Ms. Toum's deficiencies. (*Id.*) Even after putting Ms. Toum on a PIP and outlining clear expectations of where Ms. Toum needed to improve her performance, she continued to arrive late, cancel, or not show up to a meeting, and not communicate effectively and timely with teammates and her supervisor (including failure to communicate her physical whereabouts in the building to Mr. Judge despite explicit instructions that she be at her desk during working hours unless she requested permission from Mr. Judge to work in other areas of the building). (Toum Depo at 164:11-23; 201:1-5.)

Ms. Toum also admits she was on multiple occasions dishonest with Mr. Judge when she used doctor's appointments or the need to pick up prescriptions as an excuse for missing work meetings. (Toum Depo at 10:21-11:17; 93:17-95:6; 148:9-18.)

Thus, regardless of whether Plaintiff has a disability, she was not a "qualified individual capable of performing the essential functions of her job" with or without reasonable accommodation. On this basis alone, Moda is entitled to summary judgment on Plaintiff's disability discrimination claim.

Page 20 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

   b. *Plaintiff cannot show Moda's legitimate nondiscriminatory reason for her termination was a pretext for disability discrimination.*

Even if Ms. Toum could establish a prima facie case of disability discrimination, her claim still cannot survive summary judgment because Moda had legitimate, nondiscriminatory reasons for her termination that she cannot show were a pretext for disability discrimination.

Should a plaintiff make out a prima facie case, the employer has the burden of articulating a legitimate, non-discriminatory reason for termination. Ultimately, it is a plaintiff's burden to "demonstrate that [the employer's] articulated reason is a pretext for unlawful discrimination by 'either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Aragon v. Republic Silver State Disposal*, 292 F.3d 654, 658-59 (9th Cir. 2002). A plaintiff's evidence of pretext "must be both *specific and substantial*." (*Id.*, emphasis in original.)

   1. *Plaintiff was terminated for a legitimate nondiscriminatory reason.*

Plaintiff's employment at Moda was terminated on February 20, 2019, after she failed to meet performance expectations following placement on a PIP and failed to follow reasonable rules and expectations, including the expectation that she attend three meetings with an EAP provider and that she timely complete a release of information form. (Judge Decl., ¶¶ 16-17.)

Although Ms. Toum made minor improvements in certain areas of her performance during her PIP, she did not make consistent, sustained, or sufficient improvement in her performance to meet the expectations of her job position and her PIP. (Judge Decl., ¶ 13.) For example, she continued to fail to follow reasonable rules and expectations, including attendance, communication, responsiveness, meeting deadlines, asking for permission before working in other areas of the building, etc. (*Id*; Toum Depo at 200:7-16; 201:11-23; 202:8-11; 203:6-12.) One of the last straws was when the EAP closed its file on Ms. Toum's referral because Ms. Toum failed to respond to repeated attempts to contact and coordinate with her to complete the three required EAP meetings. (True Decl., ¶ 10, Ex. 3.) Ultimately, there was no way for Moda to continue

Page 21 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

working with Plaintiff when she could not meet the expectations of her position despite accommodations, verbal coaching, and attempts to provide resources and support tools, including but not limited to the PIP and EAP. Plaintiff's employment was therefore terminated for a legitimate, non-discriminatory reason, and the burden shifts back to Ms. Toum to establish pretext.

> 2. *Plaintiff cannot show that the stated reasons for her termination are a pretext for disability discrimination.*

In her deposition, Plaintiff was unable to identify a single piece of evidence to support the conclusory allegation that her alleged disability/perceived disability were motivating factors for her termination. Plaintiff provides no evidence, either direct or circumstantial, to support her subjective belief that her termination was motivated by her alleged disability/perceived disability.

Plaintiff admits that no one at Moda ever denied her requests for accommodations. (Toum Depo at 23:6-19; 19:1-20; 36:1-4; 152:10-13; 143:3-11; 164:11-23; 201:1-5.) To the contrary, even after being placed on a PIP, Mr. Judge continued to accommodate Ms. Toum and help with any alleged disability-related needs, including re-arranging his schedule around her doctor's appointments and medication refills. (*Id.*) These actions do not evidence an animus on Moda's part regarding Plaintiff's alleged disability. Indeed, they reflect the opposite.

Thus, all that Ms. Toum can rely on for her pretext argument is that the timing of her termination suggests that there might be a causal connection. However, that is not enough, in and of itself, for her disability discrimination claim to survive summary judgment. "The Ninth Circuit has held that although incidents close in time may be sufficient to establish a prima facie case of discrimination, it is not enough to prove pretext." *White v. TA Operating Corp.*, No. 06-1747-AA, 2008 U.S. Dist. LEXIS 48103, at *9-10 (D. Or. June 19, 2008) (granting summary judgment on retaliation claim where plaintiff claimed she was "terminated in retaliation for reporting sexual harassment because her alleged complaint was close in time to her termination."). *See e.g.*, *Blocle v. Solis*, 436 Fed. Appx. 777, 779 (9th Cir. 2011) (affirming summary judgment because "timing of the move, however, is insufficient to show pretext" and "[t]he temporal proximity between

Page 22 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Block's complaints and her termination is similarly insufficient to show pretext"); *Hashzmoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997) (affirming summary judgment on retaliation claim because "[a]lthough the timing of these events suffices to establish a minimal prima facie case of retaliation, it does nothing to refute the government's proffered legitimate reasons for disciplining Hashimoto").

Furthermore, Ms. Toum's own conclusory allegation that her alleged disability was a motivating factor in her termination is not enough to allow her disability discrimination claim to survive summary judgment. "A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981)). "Mere conclusory assertions of discriminatory intent … cannot be sufficient to avert summary judgment. The court must satisfy itself that there is sufficient direct or circumstantial evidence of intent." *Lindsey v. Shalmy*, 29 F.3d 1382, 1385 (9th Cir.1994) (internal quotations omitted); *accord Magana v. Commonwealth of the Northern Mariana Islands*, 107 F.3d 1436, 1448 (9th Cir.1997). Moreover, "plaintiff's subjective belief that she was doing a 'good job' at work is not sufficient evidence to prove pretext." *White v. TA Operating Corp.*, 2008 U.S. Dist. LEXIS 48103, at *10 (D. Or. June 19, 2008).

Moda provided Ms. Toum numerous accommodations, including allowing her to work in other areas of the building. To the extent Ms. Toum alleges she was discriminated against after she asked if she could move desks as Mr. Judge previously suggested, such an argument in unavailing. It would be illogical and inconsistent for Mr. Judge to accommodate Ms. Toum in a variety of ways, including allowing her to work in other areas of the building, but then turn around and discriminate against her for making a request to work from a specific desk. Perhaps more importantly, there is no evidence in the record to support such a conclusion. Thus, Ms. Toum cannot meet her burden of proving that Moda's stated reasons for her termination were a pretext for disability discrimination. As a result, Moda is entitled to summary judgment on this claim.

Page 23 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

4.    **Moda met its obligations under the ADA to engage in the interactive process and provide reasonable accommodations.**

        a.    *Mr. Judge engaged in the interactive process with Plaintiff.*

Ms. Toum's fourth claim for relief alleges that Moda failed to engage in the interactive process and/or failed to accommodate Ms. Toum's disability. The ADA requires employers to engage in the interactive process in good faith to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). "The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002).

Both state and federal courts have held that there is no independent claim for failure to engage in the interactive process. *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) ("[T]here exists no stand-alone claim for failing to engage in the interactive process. Rather, discrimination results from denying an available and reasonable accommodation."); *Stamper v. Salem-Keizer Sch. Dist.*, 195 Or. App. 291, 298, 97 P.3d 680, 684 (2004) ("[I]f an employer fails to engage in a meaningful interactive process and fails to provide the employee with an adequate accommodation, but no reasonable accommodation of the employee was possible or the employee was otherwise excluded from protection under the ADA, then the employer has acted reasonably and has not violated the ADA.").

Ms. Toum's claim for failure to engage in the interactive process fails as a matter of law. Following Ms. Toum's disclosure of her ADHD to her supervisor, Mr. Judge engaged in ongoing and regular communication with Ms. Toum. (Toum Depo at 20:7-16; 90:20-91:2; 98:18-99:11.) Mr. Judge took care not only to accommodate Ms. Toum, but also to solicit input from Ms. Toum on how he could better assist and support her. (*Id.*) He made numerous attempts to meet with Ms. Toum to discuss what else he and Moda could do to support her. (*Id.*) Ms. Toum admitted in

Page 24 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500 FAX (503) 274-1212

her deposition that she failed to take Mr. Judge up on his offers to meet and discuss what else she needed to improve her declining work performance. (Toum Depo at 26:21-24; 90:20-91:11; 99:12-15.)

Further, Mr. Judge engaged in the interactive process with Ms. Toum and granted every request she made with respect to work modifications. Any alleged breakdown in the interactive process falls squarely on Ms. Toum and her persistent failure to communicate what she wanted and needed. Because "[l]iability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown in the interactive process," Ms. Toum's claim fails as a matter of law. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002); *see Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996) ("A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith.").

To the extent that Ms. Toum contends she should have been allowed to move workstations while on her PIP, Ms. Toum's arguments are unavailing. Ms. Toum does not allege that she requested to move desks and her request was denied. Rather, Ms. Toum alleges Mr. Judge suggested a desk change may be an option if another employee moved floors. (Toum Depo at 12:1–22; 14:2-13.) Mr. Judge had already given Ms. Toum permission to work in other areas that were not her assigned desk as long as she communicated that to her team, and she was permitted to continue this practice through the end of her employment. (Toum Depo at 164:11-23; 201:1-5.)

Moda had no further duty to engage in the interactive process or continue to offer options absent Ms. Toum's request to do so. "The employer has a continuing obligation to engage in the interactive process when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001). Here, the fact that Ms. Toum did not ask for a new or different accommodation (beyond all the accommodations she had already received) is dispositive, as Moda fully complied with its obligations under the ADA.

Page 25 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

b.  *Moda provided Plaintiff reasonable accommodations.*

Plaintiff alleges in her complaint that Moda did not provide reasonable accommodations that would enable her to perform the essential functions of her job. To the contrary, Ms. Toum admitted under oath in her deposition that she made numerous requests for work modifications and cannot recall a time where her supervisor ever said no in response to her request for an accommodation. (Toum Depo at 23:6-19; 19:1-20; 33:25-34:5; 36:1-4; 152:10-13; 143:3-11; 164:11-23; 201:1-5.) Moda accommodated Ms. Toum by allowing her to work remotely, come to work late, miss work without having to take PTO, and work in other areas of the building. (*Id.*) Further, Mr. Judge repeatedly offered to confer with Ms. Toum regarding any additional assistance or accommodations she might need to perform the essential functions of her job. (Toum Depo at 20:7-16; 90:20-91:2; 98:18-99:11.) To the extent the interactive process failed, it was because Ms. Toum did not respond to Mr. Judge's offers to meet and discuss what he or Moda could do to support her. (Toum Depo at 26:21-24; 90:20-91:11; 99:12-15.)

Even if Ms. Toum formally requested and was denied a permanent seat change, Plaintiff's claim still fails as a matter of law because Moda nevertheless provided Ms. Toum other reasonable accommodations. Specifically, she was permitted to work from other areas of the building so long as she let Mr. Judge know from where she would be working. (Toum Depo at 164:11-23; 201:1-5.) To the extent Ms. Toum hangs her hat on a request for hiring more staff to help with the department's work, the case law is clear that Moda is not required to hire additional employees as an accommodation. *See* 29 CFR § 1630.2(o) (Appendix) ("the employer need not reassign any of the 'essential functions' of a job to accommodate an applicant or employee . . .") 29 CFR §1630.2(o) (Appendix). *See Zivkovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1089 (9th Cir. 2002) ("An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation.") Thus, Moda's motion for summary judgment should be granted on Plaintiff's failure to accommodate claim

/ / /

Page 26 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500 FAX (503) 274-1212

because Moda engaged in the interactive process with Ms. Toum and provided her with reasonable accommodations.

### IV.    CONCLUSION

For the foregoing reasons, this Court should grant summary judgment to Defendants and dismiss Plaintiff's Amended Complaint in its entirety with prejudice as a matter of law.


DATED this 5th day of July, 2022.

BARRAN LIEBMAN LLP

By *s/Andrew M. Schpak*
    Andrew M. Schpak, OSB No. 044080
    aschpak@barran.com
    Natalie Pattison, OSB No. 204214
    npattison@barran.com
Attorneys for Defendants

Page 27 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of July 2022, I served the foregoing **DEFENDANTS'**

**MOTION FOR SUMMARY JUDGMENT** on the following parties at the following addresses:

> Aaron W. Baker
> Serena L. Liss
> Baker Law PC
> 1 SW Columbia, Suite 1850
> Portland, OR 97258
> aaron@awbakerlaw.com
> serena@awbakerlaw.com
>
> Attorneys for Plaintiff Nisa Toum

by the following indicated method or methods set forth below:

- ☒ Electronic Filing using the Court's ECF System
- ☐ First-class mail, postage prepaid
- ☐ Hand-delivery
- ☐ Overnight courier, delivery prepaid
- ☐ Email

_s/ Andrew M. Schpak_
Andrew M. Schpak
Natalie M. Pattison

CERTIFICATE OF SERVICE